**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MOHAMMED KOYSOR AHMED,

Plaintiff,

        -against-                  **COMPLAINT**

CITIBANK N.A.,

                                     **Docket No.**: 19cv4439
                                     Jury Trial Demanded:  Yes

                         Defendant.
_____/

       Plaintiff MOHAMMED KOYSOR AHMED (known hereinafter as "Plaintiff"), a New York resident, by and through his attorney, The Tariq Law Firm PLLC, against Defendant CITIBANK N.A. (known hereinafter as "Defendant"), pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Equal Credit Opportunity Act, 15 U.S. Code § 1691 *et seq.*, federal civil rights law under 42 U.S.C. § 1981, the Administrative Code of the City of New York § 8-107, and New York's Human Rights Law under New York Executive Law § 296-a(1)(b), respectfully sets forth and alleges the following based upon information and belief:

**PARTIES IN THE COMPLAINT**

1.      Plaintiff, Mohammed Koysor Ahmed, is a natural person and an "applicant" as defined by The Equal Credit Opportunity Act (the "ECOA"). 15 U.S.C. § 1691a(b). Plaintiff is also a Muslim of Bangladeshi descent.

2.      The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.*

3.      Plaintiff also meets the definition of "applicant" supplied by the Bureau of Consumer Financial Protection (the "Bureau"). 12 C.F.R. § 202.2. "Applicant" is defined by the Bureau as "any

1

person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." *Id.*

4.     The Bureau's definition of "applicant" is applicable here based on the authority granted by Congress to the agency to promulgate regulations to achieve the goals of the ECOA. § 1691b.

5.     The Defendant, Citibank N.A., is a "creditor" as defined by the ECOA. Defendant "regularly extends, renews, or continues credit." § 1691a(e).

6.     The action of Defendant in closing the credit card accounts of Plaintiff qualifies as an "adverse action" as defined by the ECOA.

7.     The Defendant, Citibank N.A., also operates as a "place or provider of public accommodation" under the Administrative Code of the City of New York § 8-102.

8.     The Defendant, Citibank N.A., is also a "creditor" as defined by New York Executive Law § 292(22).

## JURISDICTION

9.     Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1691e(f), and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

10.     This action arises out of the Defendant's repeated violations of the Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. § 1691 *et seq*. It also arises out of Defendant's violations of Plaintiff's equal rights under the law as defined under 42 U.S.C. § 1981.

11.     This action also arises out of Defendant's violations of New York state law. Those claims arise under the Administrative Code of the City of New York § 8-107 and New York Executive Law § 296-a(1)(b).

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because the Defendant conducts business in and can be found in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## FACTUAL ALLEGATIONS

13.     Plaintiff repeats, reiterates, and incorporates the allegations contained previously within this Complaint with the same force and effect as if the same were set forth at length herein.

14.     In two letters dated February 1, 2019, Defendant notified Plaintiff that his checking accounts ending in 8176 and 3279 were being closed. The letters both state that the decision to close his accounts was "made following the results of a review of bank information and records," but does not provide any further reasoning.

15.     Plaintiff later received a letter dated March 6, 2019 confirming that his account ending in 8176 had been closed. The letter instructs him to destroy and dispose of any ATM or debit cards linked to the account and cancel any direct deposits or automatic payments that had been set up. Again, it does not provide a detailed reason as to why this account, or his other account, were closed.

16.     In or around March 2019, Defendant began notifying Plaintiff through a series of letters that Defendant had decided to close Plaintiff's credit card accounts.

17.     Defendant then informed Plaintiff, in a letter dated March 9, 2019, that Plaintiff's Macy's credit card account ending in 8330, had been closed effective March 8, 2019. The letter also contains a notice regarding the creditor's obligations under the ECOA not to discriminate against credit applicants "on the basis of race, color, religion, national origin, sex, marital status, [or] age." It informs Plaintiff of the Bureau's power to administer compliance with the act, and provides an address where, presumably, complaints can be made. The address is listed as 701 E. 60th St. N., Sioux Falls, SD 57104.

3

18.     The creditor of the Macy's credit card is listed as Department Stores National Bank. Although the letter does not identify Department Stores National Bank, in a 2008 public disclosure report, the Office of the Comptroller of Currency (the "OCC") includes a description of the institution as "the credit card issuer of Visa and retail private accounts for Citibank's relationship with Macy's, Inc." Comptroller of the Currency Administrator of National Banks, *Community Reinvestment Act Performance Evaluation: Department Stores National Bank* (2008) available at https://www.occ.gov/static/cra/craeval/Oct08/24622.pdf.

19.     Defendant also informed Plaintiff, via another letter dated March 12, 2019, that Plaintiff's Best Buy credit card account, ending in 5130, had been closed effective March 11, 2019. The letter contains the same notice regarding the ECOA, and lists the creditor as Citibank, N.A. *Id*. The address included for Citibank, N.A. is 701 E. 60th St. N, Sioux Falls, SD 57104. *Id.* This is the same address listed for Department Stores National Bank.

20.     In another letter dated March 12, 2019, Defendant informed Plaintiff's that his credit card account for The Home Depot, ending in 8399, had been closed effective March 11, 2019. The letter contains the same notice regarding the ECOA's prohibition against discrimination and lists the creditor as Citibank, N.A.

21.     Defendant also informed Plaintiff, in a second letter dated March 12, 2019, that Plaintiff's Citi Thank You Preferred MasterCard credit card account, ending in 5200, had been closed effective March 12, 2019. The notice states that Plaintiff "may request a statement of specific reasons for the action taken to close [his] account in writing… by May 11, 2019." It also includes notice of the ECOA's prohibition against discrimination based on race, color, religion, national origin, etc. and lists the creditor as Citibank, N.A.

22.     In a third letter dated March 12, 2019, Defendant informed Plaintiff that his Citi Simplicity MasterCard credit card account, ending in 3196, had been closed effective March 12, 2019. The

letter contains the same statement regarding Plaintiff's right to inquire in writing regarding specific reasons for the account closure. It also includes the same ECOA statement and lists the creditor as Citibank, N.A.

23.     Defendant also informed Plaintiff, via a final letter dated March 12, 2019, that Plaintiff's Citi Premier MasterCard credit card account, ending in 8936, had been closed effective March 12, 2019. It similarly informs Plaintiff of his right to inquire in writing regarding specific reasons for the account closure, includes the same ECOA statement, and lists the creditor as Citibank, N.A.

24.     All the aforementioned letters from Defendant also informed Plaintiff that he is still responsible for any remaining balances and would continue to receive the corresponding monthly billing statements until the balances, if any, were completely paid in full.

25.     Plaintiff then proceeded to request, via several letters dated April 1, 2019, that Defendant provide him with a statement of reasons for the closure of each of his Citibank credit card accounts. Six separate letters were sent to Citibank, N.A. regarding his Macy's credit card ending in 8330, his Best Buy credit card ending in 5130, his Home Depot credit card ending in 8399, Citi Thank You Preferred MasterCard credit card account ending in 5200, his Citi Simplicity MasterCard ending in 3196, and his Citi Premier MasterCard ending in 8936. All of the letters ask Defendant, pursuant to the ECOA, to "please provide [plaintiff] with a written response within 30 days explaining the reason for [his] account closure."

26.     Defendant's responded to Plaintiff's requests via a letter, dated April 19, 2019, wherein Defendant only informed Plaintiff that "As a result of a previous review of your Citi banking accounts, we had notified you that your Citi banking relationship was terminated as of March 4, 2019. In accordance with our decision to no longer do business with you, the above-referenced accounts were closed as of March 11, 2019." The letter addresses five of the six requests by Plaintiff, excluding the request made regarding his Macy's credit card.

27.     The Card Agreement Guides associated with Defendant's Thank You Preferred, Simplicity, and Premier credit cards state that Defendant "may close or suspend your Account…for any reason, or for no reason." It also states that Defendant may close a card holder's account "without notifying you, as allowed by law."

28.     The Card Agreements associated with Defendant's Macy's, Best Buy, and The Home Depot credit cards states that Defendant "may also close your account…at any time for any reason" and that Defendant may close a card holder's account "without prior notice to you.

29.     All aforementioned Agreements fail to inform card holders that Defendant is obligated under the ECOA to provide a statement of reasons when taking adverse actions against them, including closing their credit card accounts. While they claim they can take adverse action for no reason, this is superseded by federal law to the contrary. 15 U.S.C. § 1691(d).

30.     Defendant's initial letters simply informed Plaintiff his credit card accounts had been closed and Plaintiff could request a statement of specific reasons explaining the closure of his credit card accounts.

31.     When Plaintiff exercised his statutory right to make such a request, Defendant's response letter, dated April 19, 2019, did not provide Plaintiff with a statement of specific reasons explaining the closure of his credit card accounts.

32.     Defendant's April 19, 2019 letter was defective on its face and in violation of the ECOA because it failed to provide Plaintiff a statement of specific reasons as to why Defendant elected to close his Citibank credit card accounts.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
### 15 U.S.C. § 1691 *ET SEQ.*

33.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully stated herein.

34.     Congress enacted the Equal Credit Opportunity Act (ECOA) making it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction." 15 U.S.C. § 1691(a). A notice requirement was included in the statute as one way to ensure that creditors do not unlawfully act discriminatorily. *Schlegal v. Wells Fargo*, 720 F.3d 1204, 1210 (9th Cir. 2013).

35.     While the ECOA was enacted for the purpose of preventing discrimination in the granting of credit by creditors, at least one court has held that evidence of discrimination is not necessary to create a cause of action when a creditor fails to meet the statute's notice requirement. *Costa v. Mauro Chevrolet, Inc, et. al.*, 390 F. Supp. 2d 720 (N.D. Ill. 2005).

36.     In *Costa*, the court held that "without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA. *Id*. at 728. Additionally, the court reasoned that "because § 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's antidiscrimination provisions…[the plaintiff's] allegation that [the defendant] failed to provide written notification of an adverse credit action is sufficient to establish an ECOA claim." *Id.* at 729.

37.     Similarly, here, Defendant's failure to provide a statement of reasons upon Plaintiff's request regarding closure of his credit card accounts is sufficient to create a cause of action under the ECOA. § 1691(d).

38.     Under 15 U.S.C. § 1691(d)(2) "each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. § 1691(d)(2).

39.     The statute specifies how creditors can satisfy their obligation to provide a statement of reasons when taking adverse action against an applicant. A creditor can either provide statements of reasons as a matter of course upon taking adverse action or give written notice when such action is taken. *Id*.

40.     While Defendant did inform Plaintiff of his right to request a statement of specifics reasons explaining the closure of his credit card accounts, Defendant did not provide a statement of reasons in its response letter, dated April 19, 2019, to Plaintiff.

41.     A statement of reasons meets the requirements of the ECOA "only if it contains the specific reasons for adverse action taken." § 1691(d)(3). As a matter of fact, Defendant provided no specific reasons at all for the closure of Plaintiff's credit card accounts.

42.     The action taken by Defendant in closing the credit card accounts of Plaintiff qualifies as an adverse action under the definition provided by the ECOA. For the purpose of the statute "adverse action" is defined as "a denial or revocation of credit, a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." § 1691(d)(6).

43.     The Ninth Circuit has followed the plain meaning of "revocation" and held that cancelling the right to defer payment of a debt rightfully gives rise to a cause of action under the ECOA. *Schlegal*, 720 F.3d at 1211 (9th Cir. 2013). There, the court held that the defendant bank failed to abide by the terms of a loan modification made between the parties, and the court held that this constituted an adverse action under the statute. *Id*.

44.     Similarly, here, Defendant revoked Plaintiff's right to defer payment of a debt by closing Plaintiff's credit card accounts and failing to provide a sufficient statement of reasons for doing

so.  The only reason given by Defendant for canceling the accounts was because of "a review of [his] Citi banking accounts" and their previous notification that his "Citi banking relationship was terminated as of March 4, 2019."

45.     This letter sent by Defendant is inadequate and does not meet the ECOA's requirements under § 1691(d)(3). This is especially true given that the only justification offered by Defendant is that his credit cards were closed as a result of his bank accounts being closed. Plaintiff was never given a specific reason as to these initial account closures either.

46.     Given that the ECOA does not include a requirement to provide a statement of reasons for closing a bank account, it appears as though Defendant has closed Plaintiff's bank accounts without justification, and then used that action to justify closure of his credit card accounts. This is an unacceptable way of attempting to undermine the intention of Congress in making a requirement that reasons be given when adverse action is taken by creditors. If one unjustified act can be used to justify another, there can be no assurance that discrimination in the issuance of credit is avoided, as the ECOA was meant to obtain. § 1691(a).

47.     The ECOA defines an "applicant" as "any person who applies directly for an extension, renewal, or continuation of credit."  § 1691a(b).

48.     While the ECOA definition of "applicant" is narrow, the statute grants power to the Bureau of Consumer Financial Protection (hereafter the "Bureau") to promulgate regulations to carry out the purposes of congress. § 1691b(a). Additionally, the statute provides that courts should defer to the interpretation of the Bureau regarding any provision of the ECOA "as if that agency were the only agency authorized to apply, enforce, interpret, or administer" it. § 1691b(g).

49.     The Bureau's Regulation B defines an "applicant" as "any person who requests or has received an extension of credit from a creditor and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2

50.     Pursuant to the ECOA, the broader definition of "applicant" supplied by the Bureau is given deference, and thus applies to Plaintiff as a person who has requested and received credit from Defendant and has become contractually liable for that credit.

51.     Additionally, because Defendant's letters inform Plaintiff that he will continue to remain contractually liable for the balances on his accounts, any argument that Plaintiff does not meet the definition of an applicant is precluded.

52.     Due to Defendant's failure to provide a statement of reasons for its decision to take adverse action against Plaintiff, Plaintiff is entitled to relief under the ECOA.

53.     Congress has created civil liability for any creditor that fails to comply with the terms of the ECOA. § 1691e(a). A creditor who does not meet the requirements imposed by the act becomes "liable to the aggrieved applicant for any actual damages sustained by such applicant. *Id.* Additionally, punitive damages may be granted to up to $10,000. § 1691e(b).

54.     In addition to actual damages, aggrieved applicants may be entitled to equitable and declaratory relief. § 1691e(c). They can also collect reasonable attorneys' fees. § 1691e(d).

## SECOND CAUSE OF ACTION

### VIOLATION OF PLAINTIFF'S EQUAL RIGHTS UNDER THE LAW
### 42 U.S.C. § 1981

55.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully stated herein.

56.     Under Federal Civil Rights Law:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).

57.     The right to "make and enforce contracts" is defined as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

58.     Further, "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." § 1981(c).

59.     Defendant here acted discriminatorily by closing Plaintiff's bank and credit card accounts, thereby denying him the equal opportunity to enjoy the benefits of his contractual relationship. This contractual relationship was severed for discriminatory purposes, in clear violation of federal law.

60.     The allegation that Plaintiff's accounts were closed for discriminatory purposes is not made without supporting evidence. Plaintiff is right to believe that Defendant acted with unlawful motivations based on the fact that Defendant failed to provide him with specific reasons for taking adverse action as required under the ECOA.

61.     In order to evaluate a discrimination claim under § 1981, the Second Circuit "requires the combined application of the *McDonnell Douglas* Framework and the *Iqbal* pleading principles." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 291 (D. Conn. 2017).

62.     Under the *McDonnell Douglas* framework:

> An employment discrimination plaintiff establishes a prima facie case if the plaintiff can show that he or she is a member of a protected class; was qualified for employment in the position in question; suffered an adverse employment action; and there is 'some minimal evidence suggesting an inference that the employer acted with discriminatory motivation.' *Id*. at 289 (Quoting *Littlejohn v. City of New York*, 795 F. 3d 297 (2d 2015).

63.     Once these prima facie showings are made, a temporary presumption of discriminatory motivation is raised "which shifts the burden of production to the employer to come forward with a non-invidious justification for the adverse employment action." *Id*. at 289-290.

64.     Although this burden shifting framework was originally developed to address discrimination in the employment setting, the Second Circuit has also implemented it when evaluating discrimination claims in other settings. *Id.* at 291.

65.     Under the *Iqbal* standard, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

66.     Plaintiff's complaint has met the pleading standards as required by the Second Circuit in evaluating discrimination claims. Given the fact that Plaintiff's bank and credit card accounts were closed without a sufficient statement of reasons given, the burden shifts to Defendant to provide a non-discriminatory reason for taking such actions.

### THIRD CAUSE OF ACTION

### DISCRIMINATORY REFUSAL OF SERVICE
### Administrative Code of the City of New York § 8-107

67.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully stated herein.

68.     Although the ECOA provides a remedy for Plaintiff based on Defendant's failure to provide sufficient reasons for canceling his credit card accounts, it does not provide relief for the closure of his bank accounts, similarly without a proper purpose. Under the ECOA, the requirement to provide a statement of reasons for taking adverse action was created in order to prevent discrimination from taking place. § 1691(d).

69.     The only reason given by Defendant for closing Plaintiff's credit card accounts was that they had previously closed his bank accounts. This creates a good faith belief that his bank accounts, as well as his credit card accounts, were closed due to an improper purpose.

70.     The New York legislature has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another" because of "actual or perceived differences." Administrative Code of the City of New York § 8-101.

71.     Under the New York City Administrative Code, it is unlawful discriminatory practice" to "refuse, withhold from or deny…the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilitates or privileges of the place or provider of public accommodation" based on "any person's actual or perceived race, creed, color, national origin, etc." § 8-107(4).

72.     A place or provider of public accommodation under the Code:

> Includes providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available. § 8-102.

This broad definition includes banks, such as Defendant, that provide goods, services, facilities, and accommodations to customers.

73.     Under § 8-502 of the New York Administrative Code:

> [A]ny person claiming to be a person aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title or by an act of discriminatory harassment or violence as set forth in chapter 6 of this title shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate, unless such person has filed a complaint with the city commission on human rights. § 8-502.

74.     Here, Plaintiff has a cause of action that may be brought in this Court against Defendant.

75.     In order for Plaintiff to successfully show that Defendant acted discriminatorily in closing his bank accounts, he must establish "a prima facie case, and the burden shifts to [Defendant] to articulate a legitimate, non-discriminatory reason for treating [him] differently" from other

customers. *Silver Dragon Rest. v. City of New York Comm'n on Human Rights*, 2004 N.Y. Misc. Lexis 3200 (Sup. Ct. Kings Cnty. 2004).

76.     Here, Plaintiff has established a prima facie case that his accounts were closed based on a discriminatory purpose. Because Defendant failed to provide an adequate reason for closing his credit card accounts, and because such statement of reasons is required by the ECOA to protect consumers against discrimination, it is reasonable to conclude that Defendant had a discriminatory purpose in taking these actions against Plaintiff.

77.     Defendant has the burden of showing that it did not act discriminatorily by taking action in closing Plaintiff's bank accounts. It further has the burden of showing that it did not rely on an unlawful closure of Plaintiff's bank accounts in order to justify an improper closure of his credit card accounts.

## FOURTH CAUSE OF ACTION

### UNLAWFUL DISCRIMINATION IN RELATION TO CREDIT
### New York Executive Law § 296-a(1)(b)

78.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully stated herein.

79.     Under New York's Human Rights Law, it shall be unlawful discriminatory practice for "any creditor or any officer, agent or employee thereof" to:

> To discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race, creed, color, national origin, sexual orientation, military status, age, sex, marital status, disability, or familial status.
> New York Executive Law § 296-a(1)(b).

80.     Defendant here refused Plaintiff the ability to maintain his contractual relationship by keeping his bank accounts. Defendant also refused Plaintiff the extension of credit. Both of these actions were taken for discriminatory purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1.  Award actual damages pursuant to 15 U.S.C. § 1691e(a);

2.  Award punitive damages of $10,000.00 pursuant to 15 U.S.C. § 1691e(b);

3.  Award additional punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

4.  Award additional punitive damages pursuant to the Administrative Code of the City of New York
    § 8-502(a);

5.  Award damages pursuant to the New York Executive Law § 297(9);

6.  Award equitable relief pursuant to 15 U.S.C. § 1691e(c);

7.  Award declaratory relief finding that Defendant violated the ECOA and acted discriminatorily
    under 42 U.S.C. § 1981, the Administrative Code of the City of New York City § 8-107, and
    the New York Executive Law § 296-a(1)(b);

8.  Enter a judgment in favor of Plaintiff against Defendant for an amount of damages to be
    determined at trial;

9.  Award Plaintiff attorneys' costs and fees pursuant to 15 U.S.C. § 1691e(d), 42 U.S.C. § 1988(b),
    and Administrative Code of the City of New York § 8-502(g);

10. For any such other and further relief, as well as further costs, expenses and disbursements of
    this action, as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by
jury on all issues so triable.

Dated:  August 1, 2019

Respectfully submitted,

  **s/Subhan Tariq**    
Subhan Tariq, Esq.
The Tariq Law Firm, PLLC
*Attorney for Plaintiff*
34-18 Northern Blvd – Suite 2-25
Long Island City, NY 11101

To:

    Citibank N.A.
    399 Park Ave Front. 1
    New York, NY 10022

    (via Prescribed service)

    Clerk of the Court,
    United States District Court
    Eastern District of New York
    255 Cadman Plaza E.
    Brooklyn, NY 11201

    (for filing purposes)