UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MOHAMMED KOYSOR AHMED,

                      Plaintiff,

    -against-                              **MEMORANDUM AND ORDER**
                                                      19-CV-4439-MKB-SJB

CITIBANK, N.A.,

                      Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Plaintiff Mohammed Koysor Ahmed ("Ahmed" or "Plaintiff") commenced this action against Citibank, N.A. ("Citibank" or "Defendant") on August 1, 2019 alleging that Citibank violated various anti-discrimination laws, including the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, federal civil rights law (42 U.S.C. § 1981), the Administrative Code of the City of New York § 8-107, and the New York Human Rights Law, when it closed his bank accounts and several credit card accounts. (Compl. dated Aug. 1, 2019 ("Compl."), Dkt. No. 1 at 1). On April 3, 2020, Citibank filed a motion to compel arbitration and requested a stay pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). (*See* Mot. to Compel Arbitration dated Apr. 3, 2020 ("Def.'s Mot."), Dkt. No. 17). For the reasons described below, the Court grants Citibank's motion to compel arbitration. In light of this grant, the Court has issued a separate report and recommendation that the case be dismissed and closed by the Clerk of Court.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        Plaintiff Ahmed is a New York resident. (Compl. at 1). He is a Muslim of Bangladeshi descent. (*Id.* ¶ 1). Ahmed is a former banking customer of Citibank, a national banking association located in Sioux Falls, South Dakota. (Decl. of Joan

Haslam in Supp. of Def.'s Mot. dated Apr. 3, 2020 ("Haslam Decl."), Dkt. No. 18 ¶ 1). In total, Ahmed had two Citibank deposit accounts and six credits cards issued by Citibank or its affiliate Department Stores National Bank ("DSNB").[1] (*Id.* ¶ 3; Grayot Decl. ¶ 4; Decl. of Kelly Booth dated Apr. 3, 2020 ("Booth Decl."), Dkt. No. 20 ¶ 4; Compl. ¶¶ 14, 25).

In July 2005, Ahmed opened a Citibank savings account ending in 3279 ("3279 Savings Account"). (Haslam Decl. ¶ 3). Three years later, in June 2008, Ahmed opened a Citibank checking account ending in 8176 ("8176 Checking Account"). (*Id.* ¶ 4). Both accounts are governed by Citibank's Client Manual for Consumer Accounts (the "Client Manual"), which contains the terms and conditions of the account agreement between Citibank and its customers. (*Id.* ¶ 5). It is the practice and requirement of Citibank to give customers a copy of the Client Manual at the time a consumer deposit account is opened. (*Id.*). As such, Ahmed would have received a copy of the Client Manual when he opened the 3279 Account and again when he opened the 8176 Account. (*Id.* ¶¶ 3–6). Ahmed does not dispute that he received a copy of the Client Manual when he opened his accounts.

The Client Manual includes a provision requiring arbitration, subject to certain exclusions inapplicable here, of "any dispute between [Citibank and Ahmed], or concerning [his] other Citibank deposit . . . accounts."[2] (Client Manual dated Dec. 6,

---

[1] DSNB is a national bank located in Sioux Falls, South Dakota. (Decl. of Andrew Grayot in Supp. of Def.'s Mot. dated Apr. 3, 2020 ("Grayot Decl."), Dkt. No. 19 ¶ 11). Citibank is the parent corporation of DSNB. (*Id.*).

[2] The provisions exclude from arbitration claims filed in small claims court and limit arbitration of collection claims to those initiated by the account holder. (Dec. 2004 Client Manual at 21; May 2007 Client Manual at 22).

2004 ("Dec. 2004 Client Manual"), attached as Ex. 1 to Haslam Decl., Dkt. No. 18 at 20); Client Manual dated May 26, 2007 ("May 2007 Client Manual"), attached as Ex. 2 to Haslam Decl., Dkt. No. 18 at 22 (same)). The provision in the Client Manuel also requires arbitration of "[d]isputes . . . relating to the enforceability or interpretation of any of these arbitration provisions." (Dec. 2004 Client Manual at 36; May 2007 Client Manual at 22).

Ahmed also opened six credit card accounts with Citibank or DSNB. They were: (1) a Citibank Thank You Preferred Mastercard account ending in 5200 that was issued in April 2011 (the "5200 Mastercard Account"), (Compl. ¶ 21; Booth Decl. ¶ 4); (2) a Citibank Premier Mastercard account currently ending in 8936 that was issued in December 2011 (the "8936 Mastercard Account"), (Compl. ¶ 23; Booth Decl. ¶ 4); (3) a Citibank Simplicity Mastercard account currently ending in 3196 that was issued in June 2013 (the "3196 Mastercard Account"), (Compl. ¶ 22; Booth Decl. ¶ 4); (4) a Macy's account currently ending in 8330 that was issued in June 2011 by DSNB (the "Macy's Account"), (Compl. ¶ 25; Grayot Decl. ¶ 4); (5) a Best Buy account currently ending in 5130 that was issued by Citibank in February 2015 (the "Best Buy Account"), (Compl. ¶ 19; Grayot Decl. ¶ 4); and (6) a Home Depot account currently ending in 8399 that was issued by Citibank in January 2016 (the "Home Depot Account"), (Compl. ¶ 25; Grayot Decl. ¶ 4).

Each of the six credit card accounts is subject to a "Card Agreement" with written terms and conditions that are amended from time to time. (Booth Decl. ¶¶ 4–5; Grayot Decl. ¶¶ 5, 8, 11). Card Agreements are mailed to the credit card account holder when the account is opened. (Booth ¶¶ 6, 13, 20; Grayot Decl. ¶¶ 6, 9, 11). Card Agreements for each of the six credit cards were mailed to Ahmed at the time the accounts were

3

opened. (Booth ¶¶ 6, 13, 18; Grayot Decl. ¶¶ 6, 9, 11.). Ahmed does not dispute that he received these Card Agreements.[3]

Each of the operative Card Agreements for Ahmed's credit card accounts contains a provision requiring arbitration of any claim related to the account or the relationship with Ahmed. The provision requires arbitration of:

> any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship (called "Claims"). . . . Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy . . . they seek.

(*See* Consumer Credit Application for Home Depot Account dated Nov. 4, 2015 ("Home Depot Account"), attached as Ex. 3 to Grayot Decl., Dkt. No. 19 at 10; Citibank Updated Card Agreement for 8936 Account dated Nov. 6, 2016 ("8936 Account"), attached as Ex. 5 to Booth Decl., Dkt. No 20 at 3; Citibank New Card Agreement for 3196 Account ("3196 Account"), attached as Ex. 9 to Booth Decl., Dkt. No. 20 at 4; Citi Forward Visa Information for 5200 Account dated Nov. 14, 2017 ("5200 Account"), attached as Ex. 16 to Booth Decl., Dkt. No. 20 at 15; PL CIT Letter for Macy's Account ("Macy's Account"), attached as Ex. 7 to Grayot Decl., Dkt. No. 19 at 15–16; *see also* Card Agreement for Best Buy Account dated 2013 ("Best Buy Account"), attached as Ex. to Grayot Decl., Dkt. No. 19 at 6 ("All Claims relating to your account, a prior account, or our relationship are

---

[3] For four of the cards, namely the 8936 Account, 3196 Account, 5200 Account, and the Macy's Account, Ahmed received updated agreements, which gave him the right to reject arbitration provisions contained therein. The updated Card Agreements for the 8936 Account, 3196 Account, and 5200 Account contained substantially identical or identical arbitration provisions to the provisions in the original Card Agreements for those accounts. The original Macy's Account did not include an arbitration provision; however, an arbitration provision was added in a June 2015 update. Ahmed never rejected these updated provisions. (Booth Decl. ¶¶ 10–12, 15–17, 20–22, 24–25; Grayot Decl. ¶¶ 15–18).

subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision."); Booth Decl. ¶¶ 4, 6, 13; Grayot Decl. ¶¶ 6, 9, 16). The Best Buy Card Agreement arbitration provision includes an additional term that requires that "the application, enforceability, or interpretation of . . . this arbitration provision" must be determined by an arbitrator. (Best Buy Account at 6). The other Card Agreements do not contain this additional term.[4]

Ahmed maintained and held all eight Citibank accounts until Citibank began to close his accounts. (Compl. ¶¶ 13–23). On February 1, 2019, Ahmed received a letter stating that "following the results of a review of [his] bank information and records," Ahmed's checking accounts ending in 8176 and 3279 were being closed. (*Id.* ¶ 14). In March 2019, Citibank notified Ahmed through a series of letters that Citibank had decided to close all of Ahmed's credit card accounts. (*Id.* ¶ 16). On March 12, 2019, Citibank closed Ahmed's credit card accounts and provided him letters informing him that he was still responsible for the remaining balances on the credit cards. (*Id.* ¶¶ 21–24). Ahmed proceeded to request, by mailing several letters dated April 1, 2019 to Citibank, a statement of reasons for the closure of each of his credit card accounts. (*Id.* ¶ 25). Citibank responded to Ahmed's request by informing him via letter that "[a]s a result of a previous review of your Citi banking accounts, we had notified you that your Citi banking relationship was terminated as of March 4, 2019. In accordance with our

---

[4] Each of the Card Agreements also include a South Dakota choice of law provision. (*See* 8936 Account at 15 ("Federal law and the law of South Dakota govern the terms and enforcement of this Agreement."), 3196 Account at 15 (same), Macy's Account at 16 (same); Best Buy Account at 7 ("Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement."), Home Depot Account at 10 (same), Macy's Account at 18 (same)).

5

decision to no longer do business with you, the above-referenced accounts were closed as of March 11, 2019." (Compl. ¶ 26). Ahmed claims that this letter was defective on its face and a violation of the Equal Credit Opportunity Act because it failed to provide specific reasons as to why Citibank decided to close Ahmed's credit card accounts. (*Id.* ¶ 32). Ahmed alleges that Citibank closed Ahmed's accounts for a discriminatory purpose without proper explanation. (*Id.* ¶¶ 40, 42, 59).

As a result, Ahmed brought this action, alleging: (1) a violation of the Equal Credit Opportunity Act pursuant to 15 U.S.C. § 1691, *et seq.*, (2) a violation of Ahmed's rights under 42 U.S.C. § 1981, (3) discriminatory refusal of service in violation of the Administrative Code of the City of New York § 8-107, and (4) unlawful discrimination in relation to credit in violation of New York Executive Law § 296-a(1)(b). (Compl. at 1, 7–14). Ahmed seeks actual and punitive damages, attorney's fees and costs, and a declaratory judgment that Citibank violated the above statutes. (*Id.* at 15). Citibank answered the Complaint on April 19, 2018 asserting arbitration as its first affirmative defense. (Answer dated Sept. 30, 2019, Dkt. No. 8 at 11).

Citibank filed its motion on April 3, 2020 seeking to compel arbitration under the FAA based on the arbitration provisions in the Client Manual and in the Card Agreements for each of Ahmed's credit cards. (Def.'s Mem. in Supp. of Def.'s Mot. dated Apr. 3, 2020 ("Def.'s Mem."), Dkt. No. 21 at 5–11). Citibank also requests that the current proceedings be stayed pending the outcome of arbitration. (*Id.* at 13–14).

Ahmed contends that the arbitration provisions for his eight closed Citibank accounts are unenforceable because they are overbroad. (Resp. in Opp'n dated Apr. 3, 2020 ("Pl.'s Resp."), Dkt. No. 24 at 1). He also asserts that the arbitration provision for his Best Buy account does not allow for severability or modification of the provision.

6

(*Id.*). Citibank filed a reply on April 3, 2020, arguing that the agreements are valid and enforceable and that further, the arbitration provision in the Client Manual and Best Buy Account include an express delegation clause. As such, whether the terms of the arbitration provision are enforceable for the Client Manual and Best Buy Account should be decided by an arbitrator. (*See generally* Reply in Opp'n to Pl.'s Resp. dated Apr. 3, 2020 ("Def.'s Reply"), Dkt. No. 27).

DISCUSSION

In a contractual dispute implicating interstate commerce, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *All. Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) ("[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements . . . affecting interstate commerce." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).[5] Section 2 of the FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *see Wong v. 1st Disc. Brokerage, Inc.*, No. 10-CV-1487, 2011 WL 1298857, at *2 (E.D.N.Y. Jan. 6, 2011) ("The Federal Arbitration Act . . . establishes a 'federal policy favoring arbitration,' requiring federal courts to 'rigorously enforce agreements to arbitrate.'" (quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482

---

[5] "The parties do not dispute that the agreement at issue here affects interstate commerce and, accordingly, there is no question that the FAA applies." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

7

U.S. 220, 226 (1987))), *report and recommendation adopted*, 2011 WL 1235756 (Mar. 31, 2011).

> Parties may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes. Whatever they settle on, the task for courts and arbitrators at bottom remains the same: to give effected to the intent of the parties.

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (quotations and citations omitted). Under the FAA, a party may petition the court "for an order directing . . . arbitration [to] proceed in the manner provided for in [an] agreement," and once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, [it] shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"[T]o determine whether all or part of the instant action should be sent to arbitration, the Court must conduct the following inquiries:

> [F]irst it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

I.   WHETHER THE PARTIES AGREED TO ARBITRATE

Although the FAA "embod[ies] [a] national policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted), the statute "does not require parties to arbitrate when they have not agreed to do so," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (citation omitted). *See also Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533–34 (E.D.N.Y. 2016) ("Arbitration is a matter of contract. When enforcing an arbitration agreement, as with any other contract, the parties' intentions control." (quotations and citations omitted)).

Ahmed generally attacks the validity of the arbitration provisions. (Pl.'s Resp. at 1 ("Plaintiff respectfully requests the Court deny Defendant's Motion to Compel Arbitration as the language in the Citibank Arbitration Agreements is severely overbroad and unconscionable and the terms of the Best Buy Citibank Arbitration Agreement (account ending in 5130) does not allow for severability or modification of the provisions.")). For example, he asserts that the provisions are overly broad and therefore unconscionable and unenforceable. (*Id.* at 1). He also asserts that the Best Buy Account arbitration provision cannot be amended to make it enforceable. (*Id.* at 5).

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Consistent with the principle, "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement[.]" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). However, parties may delegate that question of whether the

9

arbitration provision is enforceable for resolution by the arbitrator. *Id.* at 71–72. That is, courts are generally tasked with deciding whether a dispute is arbitrable, unless "the parties agreed to submit the question of arbitrability itself to arbitration." *All. Bernstein Inv. Research & Mgmt.*, 445 F.3d at 125; *see Nicosia*, 834 F.3d at 229 ("The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). And a federal court must honor that contractual choice, unless the party challenging arbitration challenges the delegation provision specifically. *Rent-A-Center*, 561 U.S. at 72 ("Unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator.); *McCoy v. Dave & Buster's, Inc.*, No. 15-CV-465, 2018 WL 550637, at *8 (E.D.N.Y. Jan. 24, 2018) ("The Court concludes that plaintiff's enforceability challenges do not go to the validity of the delegation clauses and, therefore, that it must defer such challenges to the arbitrator.").

Citibank contends, and the Court agrees, that the arbitration provisions in the Client Manual and Best Buy Account Card Agreement delegate the question of arbitrability, *i.e.* the question of whether the agreements to arbitrate are enforceable to the arbitrator. (Dec. 2004 Client Manual at 36 ("Disputes Covered by Arbitration . . . Disputes also include claims *relating to the enforceability or interpretation* of any of these arbitration provisions. (emphasis added)); May 2007 Client Manual at 22 (same); Best Buy Account at 6 ("All Claims relating to your account, a prior account, or our relationship are subject to arbitration, *including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.*" (emphasis added))). This language expressly requires that claims regarding the

enforceability of the arbitration agreement must be delegated to the arbitrator. *See, e.g.*, *Bar-Ayal v. Time Warner Cable Inc.*, No. 03-CV-9905, 2006 WL 2990032, at *7 (S.D.N.Y. Oct. 16, 2006) (finding clause providing that "the arbitrability of disputes shall be determined by the arbitrator . . . constitutes sufficiently clear and unmistakable evidence that the parties intended to have issues of arbitrability decided by the arbitrator.").

Although Ahmed disputes the overall validity of the arbitration provisions, he does not dispute that the arbitration provisions in the Client Manual and Best Buy Account Card Agreement delegate the question of enforceability to the arbitrator. Nor does he argue that the delegation provision is itself invalid for any particular reason. Ahmed's general attack on the arbitration provisions makes no mention of the delegation provision. In sum, none of these arguments address whether it is appropriate for the arbitrator to decide the merits of enforceability. But the law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld. *See Rent-A-Center*, 561 U.S. at 72–74 (determining that unconscionability challenges to portions of an arbitration agreement—other than the delegation provision—constitute challenges to the agreement as a whole and thus should be left to the arbitrator); *McCoy*, 2018 WL 550637, at *8 ("Like in *Rent-A-Center*, plaintiff fails to even mention the delegation clauses in either of his opposition briefs. Moreover, assuming plaintiff challenges the arbitration agreement as unenforceable for the reasons discussed *supra*—inequality of bargaining power, limited damages or remedies for plaintiff's employment-related claims, and insufficient discovery—these challenges do not directly apply to the delegation clauses." (citation omitted)).

Therefore, any challenge to the enforceability of the arbitration provisions contained in the Client Manual (which govern the two Citibank bank accounts) and Best Buy Card Agreement must be addressed and decided by the arbitrator. Ahmed has not presented any specific arguments disputing the validity of the delegation provisions, and the Court finds that there is no reason they should not be enforced.[6]

As for the the remaining five Card Agreements—Card Agreements for the 8936 Account, 3196 Account, 5200 Account, Home Depot Account, and Macy's Account—they contain arbitration provisions requiring arbitration of claims "arising out of or related to [Ahmed's] account[s]" or the "relationship" between Citibank and Ahmed. (*See* 8936 Account at 3 (requiring arbitration of "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship"); 3196 Account at 4 (same); 5200 Account at 15 (same); Home Depot Account 10 (same); Macy's Account at 15–16 (same)). These five Card Agreements, however, do not contain express delegation clauses, and so the question of whether Ahmed and Citibank agreed to arbitrate his claims brought based on the cancellation of these five accounts is for the Court to decide.

It is undisputed that Ahmed received Card Agreements containing arbitration provisions for each of these credit card accounts. (Booth Decl. ¶¶ 6–25; Grayot Decl. ¶¶ 6–11). It is also undisputed that Ahmed continued to maintain and use his credit card accounts after receipt of the Card Agreements. (Booth Decl. ¶¶ 6–25; Grayot Decl. ¶¶ 6–11). This is true even for his Macy's credit card, where the Card Agreement initially

---

[6] Ahmed also does not dispute that were the arbitration provisions contained in the Client Manual and Best Buy Card Agreement enforceable, they would cover the claims he has brought in his Complaint.

did not contain an arbitration provision, but was later updated to include an arbitration provision. (Grayot Decl. ¶¶ 15–17). Ahmed's continued use of his credit cards, after receiving Card Agreements with explicit arbitration provisions, created a binding and valid agreement to arbitrate disputes related to these five accounts. *See, e.g.*, *Khaliquzzaman v. Equifax Info. Servs. LLC*, No. 17-CV-1450, 2018 WL 3825887, at *3 (E.D.N.Y. 2018) (holding that plaintiff's "undisputed use of the credit card after the undisputed opt out date of which he admits he received notice, is fatal to his argument against arbitration") (collecting cases); *McCormick v. Citibank, NA*, No. 15-CV-46, 2016 WL 107911, at *4 (W.D.N.Y., 2016) ("As discussed above, there is uncontested evidence presented on this motion to sufficiently establish that Citibank mailed the Card Agreement, along with the Notice of Change in Terms and Right to Opt Out, to plaintiff in October 2013, and plaintiff used the Best Buy card to purchase a cell phone in October 2014. In doing so, the plaintiff agreed to the terms of the Arbitration Agreement." (quotations omitted)).

Ahmed's main contention is that these arbitration provisions are overly broad and therefore unenforceable. (Pl.'s Resp. at 1).[7] He argues that overly broad arbitration provisions "lead to absurd results and are therefore unconscionable and evidence a lack of mutual intent." (*Id.*). In making this argument, Ahmed relies primarily on two cases, *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012), and *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), neither of which are apposite.

In *Jiffy Lube*, the parties signed an arbitration agreement that provided:

---

[7] Ahmed also asserts that the Best Buy Citibank Arbitration Agreement cannot be amended to make it enforceable. However, as discussed in Section II, *infra*, whether the arbitration provision in the Best Buy Card Agreement is enforceable must be decided by the arbitrator, not by this Court.

> Jiffy Lube® and you agree that any and all disputes, controversies or claims between Jiffy Lube® and you (including breach of warranty, contract, tort or any other claim) will be resolved by mandatory arbitration according to the terms of this Mandatory Arbitration Agreement ("Agreement"), except that any such dispute can be resolved by a small claims court if and for so long as the dispute is within its jurisdiction.

*Jiffy Lube*, 847 F. Supp. 2d at 1262. The Court held that the agreement was "incredibly broad," applied to "any and all disputes," was not limited to disputes "arising from or related to the transaction or contract at issue," and was therefore unconscionable. *Id.* at 1262–63.

Similarly, in *Wexler*, the Court found that the arbitration provision was overbroad. 211 F. Supp. 3d at 504. The Plaintiff signed a Service Agreement that provided:

> AT & T and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes but is not limited to: 1) claims arising out of or relating to any aspect of the relationship between us . . . ; 2) claims that arose before this or any prior Agreement . . . ; 3) claims that are currently the subject of purported class action litigation . . . ; 4) claims that may arise after the termination of this Agreement.

*Id.* at 501. The Court concluded that because the arbitration clause covered "any aspect of the relationship" between the parties as well as claims and disputes arising both before and after the execution of the agreement, absurd results would follow. *Id.* at 503. For example, if "Wexler were hit by a Mobility delivery van, or if she tripped over a dangerous condition in a Mobility store, her tort claim would have to go to arbitration." *Id.* at 503.

Unlike the problematic provisions in both of those cases, the arbitration provisions in the Card Agreements contain limitations and do not sweep as broadly. The arbitration provisions here only require arbitration of "any claim, dispute, or

14

controversy between you and us arising out of or related to your Account, a previous related Account, or our relationship." Such limitations were absent in *Jiffy Lube* and *Wexler*: any claim or dispute, even if unrelated to the agreement or relationship between the parties, was subject to arbitration. *See Jiffy Lube*, 847 F. Supp. 2d at 1263; *Wexler*, 211 F. Supp. 3d at 502 ("Even agreements traditionally classified as 'broad' because they cover all disputes 'arising out of' or 'relating to' the underlying agreement evidences only the parties' intent 'to have arbitration serve as the primary recourse *for disputes connected to the agreement containing the clause*.' Mobility's clause, by contrast, is not limited to disputes concerning its service agreement." (citation omitted)). Ahmed focuses on the words "any relationship" and "any claim," (Pl.'s Resp. at 4), but those words do not make the provisions here boundless—the arbitration clauses in his agreements are still limited to actions "arising out of or relating to" the relationship between Citibank and Ahmed. The provisions do not contain the problematic feature present in in *Jiffy Lube* and *Wexler*—arbitration of "any dispute" between the parties, regardless of whether it arose or related to the parties' relationship or contract. *See Brown v. DIRECTV, LLC*, No. 12-CV-8382, 2013 WL 3273811, at *6 (C.D. Cal. 2013) ("The facts of *Jiffy Lube* are not analogous to the situation at hand. The arbitration clause at issue in this case is not as broad as that in Jiffy Lube. Instead of a reference to "any and all disputes," it contains the more limited "relating to" language that was absent from the arbitration clause in *Jiffy Lube*."); *Zacher v. Comcast Cable Commc'ns LLC*, No. 17-CV 7256, 2018 WL 3046955, at *3 (N.D. Ill. June 20, 2018) (enforcing arbitration agreement limited to disputes "regarding the parties' relationship"); *Brown v. Firstsource Advantage, LLC*, No. 17-CV-5760, 2019 WL 568935, at *1, *4 (E.D. Pa. Feb. 12, 2019) (enforcing agreement requiring arbitration of "any current or future

15

claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us").

But even if the provisions here were facially overbroad, Ahmed's claims do not implicate the outer boundaries of what is properly arbitrable. "No part of the *Wexler* decision can be read to hold that an arbitration provision must be invalidated in its entirety simply because it could be read too broadly." *Stinson v. Best Buy Co., Inc.*, No. 18-CV-295, 2018 WL 3850739, at *10 (D. Minn. June 26, 2018) *report and recommendation adopted*, 2018 WL 3848443 (Aug. 13, 2018). "[A] broadly worded arbitration clause is [not] invalid in all applications." *Id.* Unlike the claims in *Wexler* and *Jiffy Lube*, Ahmed's claims arise out of and relate to the contractual relationship he formed with Citibank. *E.g.*, *id.* ("*Wexler* is of little value in assessing the arbitration clause at issue here. . . . Ms. Stinson's claims are inextricably intertwined with her Citibank credit agreement containing the arbitration provision. She agreed to arbitrate all claims that arise out of or relate to her Citibank account, and in this lawsuit she asserts that the terms by which she would be charged interest on that account were misrepresented to her. Unlike the plaintiff's TCPA claims in *Wexler*, which were entirely unrelated to her cell phone service, Ms. Stinson's claims against Best Buy not only arise out of and relate to her card agreement with Citibank, but also depend upon the terms of that agreement directly.").

As such, the Court concludes that the arbitration provisions contained in each of the five Card Agreements are not overly broad, unconscionable, or reflect a lack of mutual intent or agreement to arbitration. The arbitration provisions in the Card Agreements for the 8936 Account, 3196 Account, 5200 Account, Home Depot Account, and Macy's Account are, therefore, valid and enforceable.

II. WHETHER AHMED'S CLAIMS ARE ARBITRABLE

With respect to Ahmed's claims based on his two Citibank accounts and the Best Buy Account, because the validity of the arbitration provisions has been delegated to the arbitrator, the subsequent question of whether his claims fall within the arbitration provision are also to be decided by the arbitrator. (Dec. 2004 Client Manual at 36; May 2007 Client Manual at 22; Best Buy Account at 6; *supra* at pp. 10–11); *see, e.g., Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 197 (E.D.N.Y. 2019) ("The challenges made by Plaintiffs must, therefore, be addressed by an arbitrator in the first instance.").

As to the five Card Agreements containing valid arbitration provisions, Ahmed's claims are covered by the arbitration provisions.[8] When determining the scope of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone.*, 460 U.S. at 25. "Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible." *In re Am. Exp. Fin. Advisors Secs. Lit.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995)).

The arbitration provisions cover "any claim, dispute, or controversy between [Ahmed] and [Defendant] arising out of or related to [Ahmed's] Account[s] . . . or [the parties'] relationship." (*See, e.g.*, 8936 Account at 14). Ahmed's claims—violation of the Equal Credit Opportunity Act, Equal Rights under 42 U.S.C. § 1981, Discriminatory Refusal of Service in violation of the Administrative Code of the City of New York, section 8-107, and Unlawful Discrimination in Relation to Credit in violation of the New York Executive Law, section 296(a)(1)(b), (Compl. at 7–14)—all relate to the closing of

---

[8] Each of the arbitration provisions in the five agreements contain similar or identical language and are therefore analyzed together. *Supra* at pp. 4.

17

his Citibank banking and credit card accounts, which he alleges were closed for a discriminatory purpose on account of his race and without proper explanation. (Compl. ¶¶ 1, 17, 32). As such, Ahmed's claims—and Ahmed does not dispute this point—arise out of and relate to his Accounts with Citibank and his relationship with Citibank. His claims indisputably fall squarely within the scope of the arbitration provisions.

And there is no barrier to arbitrating any of Ahmed's statutory claims pursuant to the provisions in these 5 Card Agreements. It is well settled that statutory claims are subject to arbitration just like any other claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). "If federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable." *JLM Indus.*, 387 F.3d at 169 (quoting *Oldroyd*, 134 F.3d at 75–76). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92.

Ahmed's claims involve two federal statutes: the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, and the federal civil rights law, 42 U.S.C. § 1981. He does not contend that Congress intended to preclude arbitration of claims arising under either of the two statutes. Indeed, numerous courts have held that claims brought under the Equal Credit Opportunity Act and 42 U.S.C. § 1981 are arbitrable. *See, e.g., Wash. v. William Morris Endeavor Entm't, LLC*, No. 10-CV-9647, 2011 WL 3251504, at *10 (S.D.N.Y. July 20, 2011) ("Plaintiff has not shown that Congress intended to preclude arbitration for claims asserted under either Title VII or 42 U.S.C. § 1981. Moreover, courts have concluded that discrimination claims asserted under both provisions are

arbitrable.") (collecting cases); *Boone v. Toyota Motor Credit Corp.*, No. 1-CV-737, 2003 WL 1740452, at *4 (S.D.N.Y. Apr. 2, 2003) ("ECOA claims are arbitrable as statutory claims under the weight of authority in the Second Circuit."); *Mildworm v. Ashcroft*, 200 F.Supp.2d 171, 176 (E.D.N.Y. 2002) ("Indeed, there is no question that his federal . . . claims [including 42 U.S.C. § 1981] are arbitrable."). The Court finds that Ahmed's federal statutory claims are arbitrable under the FAA.[9]

Thus, having found that the arbitration provisions in the Card Agreements are valid, Ahmed's claims fall within the scope of the arbitration provision, and all his statutory claims are subject to arbitration, the Court grants Citibank's motion to compel arbitration.[10]

---

[9] Ahmed has also brought state and city law claims under the New York Human Rights Law and the Administrative Code of the City of New York § 8-107. These claims are likewise subject to arbitration. Courts have held that claims brought under the Administrative Code of the City of New York and New York State Human Rights Law are in fact arbitrable. *See, e.g.*, *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016) ("Claims under . . . the NYSHRL . . . may be made subject to arbitration."); *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 400 (S.D.N.Y. 2019) (enforcing motion to compel arbitration of plaintiff's claims under New York State and New York City Human Rights Laws).

[10] Citibank also argues that Ahmed must arbitrate his claims on an individual, non-representative basis per the arbitration provision. (Def.'s Mem. at 11). However, although Ahmed cites to Rule 23 of the Federal Rules of Civil Procedure in his Complaint, he does not otherwise mention Rule 23, nor does he assert any claims on a class basis. (*See generally* Compl.). Ahmed seeks only individual relief on behalf of himself personally. (*Id.* at 15).

## CONCLUSION

For the reasons described above, the Court grants Defendant's motion to compel arbitration pursuant to 9 U.S.C. § 4. In a separate report and recommendation issued today the Court recommends that the case be dismissed and closed.

SO ORDERED.

*/s/ Sanket J. Bulsara* June 2, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York